WASHINGTON INTERNATIONAL INSURANCE CO., PLAINTIFF *v.*
UNITED STATES, DEFENDANT

Court No. 90–07–00342

(Decided July 19, 1994)

*Sandler, Travis & Rosenberg, P.A. (Gilbert Lee Sandler, Edward M. Joffee, Joseph A. Black* and *Lynne W. Wendt)* for the plaintiff.
*Frank W. Hunger,* Assistant Attorney General; *Joseph I. Liebman,* Attorney-in-Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, U.S. Department of Justice *(Barbara M. Epstein); Mark G. Nackman,* General Attorney, U.S. Customs Service, International Trade Litigation, of counsel, for the defendant.

## MEMORANDUM

AQUILINO, *Judge:* In this action in which the plaintiff surety seeks judicial relief from denial by the U.S. Customs Service of a protest of payment of liquidated duties and interest on two consumption entries of wearing apparel through Miami, Florida, the defendant has moved for summary judgment of dismissal, and the plaintiff has responded with a cross-motion for summary judgment.

### I

Each side represents that no genuine questions of material fact, requiring trial, exist; the dispositive issues are of law. After review of the papers submitted, the quality of which obviates any need for further, oral argument, the court concurs that this action is ripe for summary judgment.

The cross-motions show, among other things, that the plaintiff executed single-entry bonds in the name of importer Mr. Philip Leemack d/b/a S & P Trading, covering the entries directly underlying this matter, Nos. 84–184559–2 and 84–184581–9, as well as a number of other entries preceding those two in 1984; that Mr. Leemack filed those bonds with Customs but not other documentation, nor did he pay duties on the entries; that the foregoing two underlying entries were made under item 807.00 of the Tariff Schedules of the United States, which provided for reduced duty treatment on importation of articles assembled abroad of U.S. components; that the Service extended liquidation of the covered merchandise pursuant to 19 U.S.C. § 1504(b) to allow adequate time to receive required information for such classification; that Mr. Leemack never submitted that information, whereupon Customs denied entry under item 807.00 and assessed additional duties on the merchandise; that, upon demand of those duties, the plaintiff paid them and then filed a formal protest thereof with the Service; and that Customs subsequently demanded an additional payment of interest, which the plaintiff made and also then protested.

### A

As originally filed, plaintiff's complaint, timely contesting denial of its protest, was pleaded in four counts, the first of which averred that the

Service failed to give notice of extension of liquidation for the subject entries required by the Tariff Act and that that failure discharged any liability for payment of increased duties. In its reply brief in support of its cross-motion for summary judgment, the plaintiff now abandons this claim. Remaining count II pleads a "breach of obligation to surety", in part as follows:

26. Before plaintiff undertook its obligations, the government knew that Leemack had not complied with Customs' regulations for earlier entries, facts unknown to plaintiff that materially increased the risk beyond that which a reasonable surety would assume. The government knew or should have known that these facts were unknown to the surety and the government had a reasonable opportunity to communicate them to the surety.

27. In addition, if the government had timely made demands for liquidated damages against Leemack and plaintiff under earlier entries, plaintiff would have learned of Leemack's alleged violations.

28. Failure of the government to notify the surety of these facts or to timely made *[sic]* demands for liquidated damages under earlier entries vitiated plaintiff's consent to be a surety under the government's bond contracts.

29. Additionally, the government's failure to require Leemack to file entry summary documentation and pay estimated duties before release of the merchandise when Leemack had been habitually delinquent in paying Customs' bills vitiated plaintiff's consent to be a surety under the bond contracts.

Count III prays for "rescission and restitution" upon the following averments, among others:

32. The government had a duty under the Customs Service regulations as follows:

(a) Upon the failure of the importer to file timely entry summary documentation, to make an immediate demand for liquidated damages upon the importer, as principal, with written notice to the surety (19 C.F.R. §§ 142.15, 172.1); and

(b) To require importers such as Leemack, who previously failed to file timely entry summary documentation and timely pay estimated duties, to file these documents and make these payments before obtaining release of the merchandise (19 C.F.R. § 142.14).

In addition, under the *Restatement Of The Law Of Security* § 124, the circumstances imposed a duty to disclose all material facts to [plaintiff] which increased its risk as surety.

33. The government's failure to comply with its obligations under the Customs Service regulations and its failure under the circumstances to disclose to [plaintiff] material facts which increased [plaintiff]'s risk as surety was a misrepresentation of material facts. [Plaintiff] relied upon the government to follow its own regulations and to otherwise disclose to [plaintiff] any material facts which would increase [plaintiff]'s risk as surety. Failure to receive

these material facts induced [plaintiff] to continue to issue entry bonds for Leemack. As a result of the government's failure to follow its own regulations and otherwise disclose material facts, [plaintiff] is entitled to a rescission of all surety bond contracts with Leemack involved here. In addition, plaintiff is entitled to recover as restitution all monies paid under these bonds.

Finally, count IV seeks a judicial declaration under 28 U.S.C. § 2201 to the effect that the referenced bonds are null and void.

Jurisdiction has been pleaded under 28 U.S.C. § 1581(a), which grants this Court of International Trade "exclusive jurisdiction of any civil action commenced to contest the denial of a protest * * * under section 515 of the Tariff Act of 1930." Defendant's answer admitted this averment, but plaintiff's abandonment of its first alleged cause of action has undermined this ground for jurisdiction. *Cf.* 19 U.S.C. §§ 1514, 1515. Plaintiff's position is that, since "the 'contract claim' cannot 'be divorced from the body of customs laws' and 'involves the administration and enforcement of the laws providing for the collection of duties * * *,' it is squarely within this Court's jurisdiction." Plaintiff's Brief, pp. 15–16, quoting from *Old Republic Ins. Co. v. United States,* 10 CIT 589, 597–98, 645 F.Supp. 943, 950–52 (1986).

This may be, but jurisdiction over a similar claim in *Old Republic* was held to be based upon subsection (i) rather than (a) of 28 U.S.C. § 1581. And that subsection, in particular (i)(4), is the jurisdictional basis, albeit residual, for plaintiff's remaining causes of action herein.

## II

According to the defendant, the plaintiff previously and unsuccessfully litigated its "breach of contract" issue in *Washington Int'l Ins. Co. v. United States,* 16 Cl.Ct. 663, *aff'd,* 889 F.2d 1101 (Fed.Cir. 1989). The defendant also contends that plaintiff's assertions are meritless in the face of precedent denying the existence of subrogation rights and privity of contract between the government and a surety.

While admitting that "it is precluded from relitigating the contractual issue"[1], the plaintiff asserts that

> [d]ifferent issues are involved in determining whether a corporate surety authorized to write Customs bonds has subrogation rights against Customs or privity with [C]ustoms in order to determine whether the Claims Court had subject matter jurisdiction under the Tucker Act, versus whether the Government breached its obligation to the surety under the Customs regulations and the principles of suretyship law. The Claims Court did not answer the questions raised in this action, whether [plaintiff] has justifiable claims against the Government in an appropriate forum under principles of suretyship law.[2]

---

[1] Plaintiff's [reply brief in] Further Support of its Cross-Motion for Summary Judgment, p. 21.

[2] *Id.* at 20–21.

In its earlier action, the plaintiff sought refund of monies paid to, and liquidated damages imposed by, the Service for single-entry bonds provided to the importer, including the two now at issue. The Claims Court[3] characterized the matter before it as follows:

* * * The gist of plaintiff's complaint is that Customs' failure to make timely demands for liquidated damages or require Leemack to file its entry summaries and to deposit duties before release of its merchandise and Customs' failure to notify plaintiff of Leemack's default, breached Customs' obligations under the bonds.

16 Cl.Ct. at 664. In other words, the plaintiff took the position that the surety agreements amounted to a contract between itself and the government under which Customs was bound by its regulations, namely, 19 C.F.R. § 142.15 and § 172.1(a), and the Service's failure to timely notify it in writing of its liability for liquidated damages was in violation thereof and thus the government's obligations under the bonds.

The Claims Court concluded that it was without jurisdiction under 28 U.S.C. § 1491(a)(1), which covers "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States". It did so upon a finding that the plaintiff had neither subrogation rights against, nor privity of contract with, Customs via the bonds for Leemack. 16 Cl.Ct. at 669–70. Moreover, the court noted that, even assuming privity, the plaintiff had failed to state a claim because the bonds did not expressly incorporate the Service's regulations. *Id.* at 669, *citing Nutt v. United States,* 12 Cl.Ct. 345 (1987), *aff'd sub nom. Smithson v. United States,* 847 F.2d 791 (Fed.Cir. 1988), *cert. denied,* 488 U.S. 1004 (1989). As indicated above, the Federal Circuit affirmed (in an unpublished decision).

### A

*Res judicata* refers to the distinctive effects of a judgment separately characterized as "claim preclusion" and "issue preclusion".[4] The latter, also known as collateral estoppel, precludes relitigation of an issue and may be invoked where "(i) the issue previously adjudicated is identical with that now presented, (ii) * * * was 'actually litigated' in the prior case, (iii) the previous determination of that issue was necessary to the end-decision then made, and (iv) the party precluded was fully represented by counsel in the prior action." *Thomas v. GSA,* 794 F.2d 661, 664 (Fed.Cir. 1986). In contrast, claim preclusion may foreclose litigation on issues that were never resolved.[5]

With regard to plaintiff's present posture, while * * * a dismissal for lack of jurisdiction does not bar a second action as a matter of claim preclusion, *it does preclude relitigation of the issues deter-*

---

[3] That court has since become known as the United States Court of Federal Claims. *See* Court of Federal Claims Technical and Procedural Improvements Act of 1992, Pub. L. No. 102–572, Title IX, § 902, 106 Stat. 4516 (1992).

[4] 18 Wright, Miller & Cooper, Federal Practice and Procedure, § 4402, at 6 (1981).

[5] *See id.,* §§ 4406–15.

*mined in ruling on the jurisdiction question.* \* \* \* Ordinarily, issue preclusion takes the form of a direct estoppel against a second effort to assert the same basis of jurisdiction for the same claim. In some circumstances, however, the issue may be established for collateral purposes.[6]

In deciding its jurisdictional question as indicated above, the Claims Court concluded that a surety bond does not create either privity of contract or subrogation rights with the government. While it did address, as a subsidiary issue, whether the provisions of 19 C.F.R. §§ 142.15 and 172.1(a)[7] were terms of the bonds, it did not resolve conclusively the claim now at bar that the government's failure to comply with those regulations, allegedly incorporated into the terms of the bonds for the earlier entries, operated to discharge the plaintiff from liability under general principles of suretyship law for the two single-entry bonds at issue in this action.

### B

Although the Claims Court finding that the foregoing regulations were not incorporated in the bonds is not binding, its analysis has direct relevance to this action. With regard to those regulations, that court did hold, citing *Nutt v. United States, supra,* that

whether or not a statute or regulation has been incorporated into a contract, so as to bind the Government, depends on the specificity of the incorporating language. \* \* \*

\* \* \* \* \* \* \*

In the present case, plaintiff fails to make a convincing argument that the regulations have been incorporated expressly into the surety agreement. Most significant is the fact that the bond does not specifically mention the notice provision, 19 C.F.R. § 172.1. In addition, the bond does not reference the notice provisions.

16 Cl.Ct. at 669.

The plaintiff nevertheless contends that these provisions are incorporated into its bonds[8] in accordance with the rationale of *Old Republic Ins. Co. v. United States,* which held that

a customs bond must be understood or applied with reference to customs laws, and that insofar as the applicable statutes and regu-

---

[6] *Id.,* § 4436 at 340–41 (footnotes omitted, emphasis added).

[7] Those pertinent provisions were as follows:

**§ 142.15   Failure to file entry summary timely.**

If the entry summary documentation is not filed timely, the district director shall make an immediate demand for liquidated damages in the entire amount of the bond in the case of a single entry bond. \* \* \*

**§ 172.1   Notice of liquidated damages incurred and right to petition for relief.**

(a) \* \* \* When there is a failure to meet the conditions of any bond posted with Customs, the principal shall be notified in writing of any liability for liquidated damages incurred by him and a demand shall be made for payment. The sureties on such bond shall also be advised in writing, at the same time as the principal, of the liability for liquidated damages incurred by the principal.

[8] As the plaintiff repeatedly points out, it is "not basing its claim on the fact that it did not receive timely notice of liquidated damages on the June 25, 1984 and later entries, but on the fact that it did not receive the appropriate notice on Leemack's earlier entries." Plaintiff's Brief, pp. 2–3. That is, the preceding bonds, copies of which have not been submitted to the court, are the ones which control.

In the absence of any contrary indication, the court assumes that the bonds provided herein for the June 25 and July 17, 1984 entries are identical in content to those previously issued. *See* Brief in Support of Defendant's Motion for Summary Judgment, Exhibit B.

> lations are "designed to affect the rights of the parties to the contract[, such provisions] must be regarded as parts of the contract." * * * In contrast, statutes and regulations that "are designed only to direct the officers of the government in the performance of their duties for its own protection and security merely, are construed as directory to them only, and as not creating any obligation to the surety in the bond, nor as forming any part of the contract of the government with him."

10 CIT at 600, 645 F.Supp. at 953, quoting *United States v. De Visser*, 10 F. 642, 648 (S.D.N.Y. 1882). The plaintiff argues that section 172.1(a), read in conjunction with section 142.15, is specifically intended to benefit and protect sureties by imposing an obligation on the government of timely notification and therefore satisfies the standard set forth originally in *De Visser*.

On its part, the defendant relies on the Claims Court finding discussed above, noting that

> it is not at all clear that if *Old Republic* were decided **subsequent** to * * * *[Washington International* and *Smithson, supra]*, the court would have determined that even a regulation expressly intended to benefit the surety (unlike the regulations here) would be read into the bond, absent the express incorporation of the regulation in the bond and a clear indication in the bond that the Government intended to be bound.

Defendant's reply brief, p. 47 (emphasis in original, footnotes omitted). The defendant further argues that section 142.15

> clearly is intended to direct the "importer" to timely perform a duty, the purpose of which is to protect the revenue. There is nothing supporting [plaintiff's] totally groundless assertion that this regulation was intended "on its face" for the benefit of the surety, or that the regulation was intended to create any duty on the part of the Government to the surety.
>
> *    *    *    *    *    *    *
>
> Section 172.1 [sets forth] * * * no particular time * * * for the demand and concurrent notification to be sent. * * *
>
> *    *    *    *    *    *    *
>
> In this case * * * it is undisputed that [plaintiff] was notified at the same time as Leemack that liquidated damages had been incurred. [Plaintiff's] lament, therefore, is not that Customs failed to comply with section 172.1, but that Customs had **not** sent the demand * * * soon enough to satisfy the surety.

*Id.* at 44, 46 (emphasis in original).

The Claims Court analysis and other case law amount to an insurmountable hurdle for the plaintiff. It is undisputed that the bonds at issue do not expressly incorporate the regulations, and this court is not at liberty to hold the government implicitly bound. *See Smithson v. United States*, 847 F.2d 791 (Fed.Cir. 1988), *cert. denied*, 488 U.S. 1004 (1989). Even under the rationale applied in *Old Republic*, section 142.15

is clearly intended to "direct the officers of the government in the performance of their duties for its own protection and security" and creates no obligation to the surety on the government's part. 10 CIT at 600, 645 F.Supp. at 953, quoting *De Visser,* 10 F. at 648. As for section 172.1(a), Customs complied by sending both the principal and the surety notice of any liability for liquidated damages. While the plaintiff argues that this section must be read in conjunction with 142.15, which instructs Customs to make an "immediate demand for liquidated damages" once the principal fails to file the proper entry documentation, section 172.1(a) contains no such time constraints. In sum, even under *Old Republic* plaintiff's assertion that the regulations are incorporated into its bonds does not stand.

## III

As stated above, the plaintiff also contends that the Service's failure to notify it of the importer's delinquent record breached the obligation spelled out in section 124 of the Restatement of the Law of Security[9] to disclose all material facts which increase a surety's risk. According to the plaintiff, this failure was "a misrepresentation of material facts * * * and induced Washington to continue to issue entry bonds for Leemack." Had it been aware of his behavior, the plaintiff contends, it would not have issued the bonds for the two entries involved in this action. *See* Plaintiff's Brief, Declaration of John R. Ciago.

Section 124 of the Restatement was addressed in *Ransom v. United States,* 17 Cl.Ct. 263 (1989), *aff'd,* 900 F.2d 242 (Fed.Cir. 1990), in which the performance and payment bond sureties brought an action against the government seeking to recover the amount of alleged improper progress payments made to the contractor. They alleged, among other things, that the government was obligated to inform them of any information which would be relevant to the risk being secured, and that a failure to do so relieved their duties under the bid bond in accordance with section 124 of the Restatement. In rejecting this contention, the Claims Court noted that that section had been "developed in the context of private commercial litigation" and intended to identify a species of fraud "based on the rule of contract law that fraud constitutes a defense." 17 Cl.Ct. at 269. The court held the Restatement

> inapplicable as a matter of law. It is fundamental to jurisprudence in this court that federal common law controls; not state law or general common law. * * * An important reason is that state law and general common law regarding relationships between private par-

---

[9] This section provided at the time of the entries as follows:

(1) Where before the surety has undertaken his obligation the creditor knows facts unknown to the surety that materially increase the risk beyond that which the creditor has reason to believe the surety intends to assume, and the creditor also has reason to believe that these facts are unknown to the surety and has a reasonable opportunity to communicate them to the surety, failure of the creditor to notify the surety of such facts is a defense to the surety.

(2) Where, during the existence of a suretyship relation, the creditor discovers facts unknown to the surety which would give the surety the privilege of terminating his obligation to the creditor as to liability for subsequent defaults, and the creditor has reason to believe these facts are unknown to the surety and has a reasonable opportunity to communicate them to the surety, breach of this duty is a defense to the surety except in respect of his liability for defaults which have occurred before such disclosure should have been made.

ties is not forced to give regard to the principle of sovereign immunity. Any waiver of sovereign immunity * * * has to be strictly construed. * * *

*Id.* at 270.

The plaintiff attempts to distinguish *Ransom* by referring to section 9 of The Restatement Third, Suretyship (approved May 26, 1992), which "makes clear that there need not be a showing of fraud on the part of the obligee, but only a showing that there was material misrepresentation by the obligee." Plaintiff's Brief, pp. 20–21.

Be that as it may, at the time of the entries involved in this action section 124 was the restatement of the law. On the other hand, whether the shield the plaintiff attempts to raise is based on fraud, which standard is still found in the more recent restatement, or on material misrepresentation, neither phenomenon is shown to exist in this action, only an indication that the plaintiff might have avoided loss had it known of Leemack's approach as to entries but a few days, weeks or months before the two at bar, which is hardly enough for grant of relief.

IV

In view of the foregoing, the defendant is entitled to grant of its motion for summary judgment, save that part of plaintiff's cross-motion which seeks recovery of the additional payment of interest, which the defendant admits in paragraph 15 of its answer to the complaint was demanded by Customs in error.

Judgment will enter accordingly.